UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA     CRIMINAL ACTION

VERSUS

DELVIN J. JOSEPH     NO. 24-00041-BAJ-RLB-1

### RULING AND ORDER

Before the Court is Defendant's **Motion To Dismiss Indictment And To Stay The Proceedings (Doc. 18, the "Motion")**, which raises facial and as-applied constitutional challenges to 18 U.S.C. § 922(g)(1). The United States opposes the Motion. (Doc. 41). For the following reasons, Defendant's Motion will be **DENIED**.

### I. PROCEDURAL HISTORY

On May 2, 2024, the Grand Jury for the Middle District of Louisiana handed down a one-count Indictment against Defendant Delvin J. Joseph. (Doc. 1). The count charges Defendant with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (*Id.*).

The Indictment does not name Defendant's prior felony conviction. (*Id.*). The United States has only provided evidence of a simple burglary felony conviction in violation of La. Stat. Ann. § 14:62, and merely "stands ready to prove [an additional felony] conviction[] for unauthorized use of a movable." (Doc. 41 at 2 n.1, 5–6; Doc. 10; Doc. 44 at 6). A Superseding Indictment filed on July 3, 2024, also did not name the underlying felony conviction. (*See* Doc. 27).

On June 7, 2024, Defendant filed a Motion To Dismiss Indictment And To Stay The Proceedings (Doc. 41). The Court stayed the case pending a ruling in *United States v. Rahimi*, 602 U.S. 680 (2024). (Doc. 26). The Court later extended the stay pending a ruling in *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), *cert. denied*, No. 24-6625, 2025 WL 1727419 (U.S. June 23, 2025). (Doc. 30).

On November 6, 2024, the Court vacated the stay and set a briefing schedule regarding the impact of the Fifth Circuit's decision in *United States v. Diaz* on Defendant's Motion. (Doc. 38). Defendant filed a Brief in Support of his Motion. (Doc. 37-1). The United States filed an Opposition. (Doc. 41). Defendant filed a Response. (Doc. 44). The United States filed a Reply. (Doc. 47).

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).

Here, Defendant pursues "as applied" and facial challenges to § 922(g)(1). (Doc. 18). "The distinction between as applied and facial challenges is sometimes hazy." *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022) (citation omitted). Generally, however, in an as-applied challenge, the Court assesses whether a law with some permissible uses "is nonetheless unconstitutional as applied to [the defendant's] activity." *Spence v. Washington*, 418 U.S. 405, 414 (1974) (reversing defendant's criminal conviction); *see Street v. New York*, 394 U.S. 576, 594

2

(1969) (same). By contrast, in a facial challenge, the Court's analysis is considerably broader in scope, assessing whether a law "could never be applied in a valid manner." *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984).

### III. DISCUSSION

Since the filing of Defendant's Motion, the Supreme Court of the United States and the Fifth Circuit have provided additional guidance on the constitutionality of 18 U.S.C. § 922(g)(1). The Court outlines such developments below, then analyzes the impact of this case law on Defendant's Motion.

#### a. Second Amendment Jurisprudence

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. These twenty-seven words, largely unquestioned since their first utterance, *see* Danny Y. Li, ANTISUBORDINATING THE SECOND AMENDMENT, 132 Yale L.J. 1821, 1846 (2023), have caused considerable consternation among our Nation's courts in the past two decades. The results of this attention have been dramatic. The Second Amendment was reinterpreted to provide an individual right to firearms, *D.C. v. Heller*, 554 U.S. 570, 595 (2008), the Supreme Court declared that the Second Amendment is no longer a so-called "second-class right," *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 70 (2022), and existing constitutional tests for firearm regulations were upended in favor of extended dives into distant

history in search of metaphorical ancestors to present-day legislation. *See United States v. Rahimi*, 602 U.S. 680, 697–701 (2024).

Thus, the Court arrives at its current marching orders. When a challenge to firearm legislation is lodged, the Court is to: (1) ascertain whether the "Second Amendment's plain text covers [the] individual's conduct," and (2) if the Second Amendment does cover the relevant conduct, determine whether the United States has satisfied its burden of showing that "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. 1, 24 (2022). In this process, the Court must not conflate the requirement for a "historical analogue" with a necessity for a "historical twin," or an identical regulation from our Nation's early history. *Rahimi*, 602 U.S. at 701.

The Fifth Circuit has also provided guidance to lower courts for navigating the post-*Bruen* landscape. In *United States v. Diaz*, 116 F.4th 458, 471 (5th Cir. 2024), *cert. denied*, No. 24-6625, 2025 WL 1727419 (U.S. June 23, 2025), the Fifth Circuit held § 922(g)(1) constitutional as applied to a defendant who had prior convictions for car theft, evading arrest, and possessing a firearm as a felon. The Fifth Circuit reasoned that since theft was a felony at the time of the Founding, and since felonies at the time of the Founding were punishable by death, then the non-capital punishment of disarmament is also permissible. *Id*. at 469. The Fifth Circuit further noted the existence of other laws in place at the time of the Founding that disarmed "those who menaced others with firearms," "disrupted the 'public order,'" and pursued

4

actions that "'le[d] almost necessarily to actual violence.'" *Id.* at 470–471 (quoting *Rahimi,* 602 U.S. at 697).

### b. Defendant's Challenges to § 922(g)(1)

The Court begins with Defendant's facial attack on § 922(g)(1). The Fifth Circuit's decision in *Diaz* forecloses such an attack. To sustain a facial challenge, "the challenger must establish that no set of circumstances exists under which the statute would be valid." *United States v. Salerno,* 481 U.S. 739, 745 (1987). The Fifth Circuit ruled that § 922(g)(1) was constitutional as applied to Diaz, and thereby ruled that § 922(g)(1) is facially constitutional. *Diaz,* 116 F.4th at 472.

Regarding Defendant's as-applied challenge, for present purposes the United States cedes that the first step of the *Bruen* analysis is satisfied as to Defendant, and that Defendant, as a member of "the people," is afforded Second Amendment rights. (Doc. 41 at 5).[1] The United States likewise does not contend that the Second Amendment's plain text does not cover Defendant's conduct. (*See* Doc. 41). The Court thus proceeds to the second step: whether there is a historical analogue for the application of § 922(g)(1) to Defendant.

The United States contends that there are historical analogues—namely, burglary statutes in place at or around the era of our Founding—that support the application of § 922(g)(1) to Defendant. (*Id.* at 5–6). The United States cites numerous

---

[1] In its Opposition, the United States specifies that it "maintains, preserving the argument for further review, that *Diaz* wrongly decided this issue and that the pre-existing right to keep and bear arms codified in the Second Amendment's text is not available to felons." (Doc. 41 at 5).

5

authorities for the proposition that burglary was a common-law felony punishable by death in England, (Doc. 41 at 6 (citing William Blackstone, *Commentaries on the Laws of England* 94–98, 228 (1769); Henry John Stephen, *Summary of the Criminal Law* 94 (1840))), and that these laws were carried over into many American colonies. (Doc. 47 at 1–2 (citing Stuart Banner, *The Death Penalty: An American History* 7 (2002) ("Except for a very brief period in early seventeenth-century Virginia, the early southern colonies did not enact criminal codes as the northern colonies did, but simply used English law."))). Moreover, the United States points the Court to various state statutes from the time of the Founding that explicitly made burglary a capital offense. *See, e.g.*, Laws of the State of New York Passed at the First Meeting of the 11th Session of the Legislature at 664–666 (1788); An Act Against Burglary, 1784 Mass. Acts & Laws January Session 242; An Act for the Punishment of Burglary and Robbery, 1783 Conn. Acts & Laws, October Session 633; An Act Against Murder, &c. § 5, 1702–1745 N.H. Laws, Province Period, Volume 2, at 313–315.

This Court, based on these arguments, has already upheld an indictment in the face of an as-applied attack on the constitutionality of a § 922(g)(1) charge supported by an underlying simple burglary conviction. *See United States v. Ennis*, No. 23-CR-00097, 2025 WL 310670 (M.D. La. Jan. 27, 2025) (Jackson, J.).

Defendant, however, presents three new arguments that the defendant did not directly present to the Court in *Ennis*. First, Defendant contends that there is not sufficient historical evidence to establish that a simple burglary conviction under

6

La. Stat. Ann. § 14:62 allows for permanent disarmament. (Doc. 44 at 5–13). Defendant argues at length that a simple burglary under Louisiana state law does not constitute what would have been considered a common-law burglary at the time of the Founding. (*Id.*). In support of this contention, Defendant argues that "the [Supreme Court's] categorical approach to determine whether a prior state offense constitutes a generic or other listed offense for purposes of ... the Armed Career Criminal Act ("ACCA")" as articulated in *Taylor v. United States*, 495 U.S. 575 (1990) should be applied in the context of a *Bruen* analysis. (*Id.* at 9–11).

Second, Defendant asserts that, regardless of whether Louisiana's simple burglary statute is analogous to common-law burglary during the Founding Era, the United States does not have a historical tradition of punishing burglary as a capital offense. (*Id.* at 11–13).

Finally, Defendant contends that disarmament upon a judicial finding of dangerousness historically had a temporal element, as in *Rahimi*, which dealt with temporary disarmament due to a prior restraining order. (*Id.* at 14–16). Defendant further reasons that burglary is not inherently dangerous, as Louisiana state law and the ACCA do not characterize simple burglary as a violent felony. (*Id.*).

Nearly identical arguments have been presented to, and rejected by, other sections of this Court in several cases. *See United States v. Crocklem*, No. 24 - CR - 00037, 2025 WL 1261610 (M.D. La. Mar. 28, 2025) (deGravelles, J.); *United States v. Stewart*, No. 24-CR-00057, 2025 WL 1829423 (M.D. La. July 2, 2025)

7

(Dick, C.J.); *United States v. Tai Duc Hoang*, No. 23-CR-00005, 2025 WL 1970267 (M.D. La. July 15, 2025) (deGravelles, J.).

This Court has determined that common-law burglary serves as a sufficient analogue to Defendant's simple burglary conviction under Louisiana state law because the United States need not identify a "historical twin." *See Crocklem*, 2025 WL 1261610 at *7–9; *Stewart*, 2025 WL 1829423 at *3–4; *Tai Duc Hoang*, 2025 WL 1970267 at *8.

Moreover, this Court has recently held that, contrary to Defendant's assertions, there is a history and tradition of punishing burglary with death or forfeiture of property. *See Crocklem*, 2025 WL 1261610 at *7; *Stewart*, 2025 WL 1829423 at *3–4; *Tai Duc Hoang*, 2025 WL 1970267 at *8.

Finally, the Court has previously ruled that burglary is a dangerous felony, and that such offenses permit permanent disarmament. *See Crocklem*, 2025 WL 1261610 at *7–9; *Stewart*, 2025 WL 1829423 at *3–5; *Tai Duc Hoang*, 2025 WL 1970267 at *7–8.

Defendant provides no compelling reason to depart from these recent holdings.

Based on the authority described *supra* and the Fifth Circuit's ruling in *Diaz* regarding the constitutionality of § 922(g)(1) as applied to a defendant with a conviction for the similar offense of theft, the Court concludes that the United States has carried its burden under step two of the *Bruen* analysis to identify a historical analogue such that § 922(g)(1)'s application to Defendant, who has

previously been convicted of a burglary offense, (Doc. 10), "fits neatly" within our Nation's history and tradition. *See Rahimi*, 602 U.S. at 698. In reaching this decision, the Court adopts and relies on the Fifth Circuit's reasoning in *Diaz* comparing the "why" and "how" of the historical analogues to § 922(g)(1). *See* 116. F.4th at 469. The Fifth Circuit instructed that the purpose behind imposing capital punishment or estate forfeiture for common-law felonies was to "deter violence and lawlessness," and that the method of punishment was chosen specifically for its permanence. *Id.*

Just so here. As applied to Defendant, § 922(g)(1)'s purpose is to deter future violence and lawlessness, and the method is a serious and irrevocable punishment—permanent disarmament—that is a similarly substantial, albeit more forgiving, discipline than Defendant would have faced in this Nation's early years. The Court therefore concludes that § 922(g)(1) is constitutional as applied to Defendant, and will deny Defendant's Motion.

The Court notes that, like its sister courts and the Fifth Circuit, the Court's decision in this case is informed and supported by the presence of the aforementioned "going armed" laws in place at or around the time of the Founding, which prevented those who menaced others with firearms from possessing such firearms on account of the "disrupt[ion] [to] the 'public order'" and the likely violence that would ensue should such persons continue to be armed. *See Diaz*, 116 F.4th at 471 (quoting *Rahimi*, 602 U.S. at 697); *United States v. Robinson*, No. CR 22-253, 2024 WL 4827375, at *7 (E.D. La. Nov. 19, 2024); *United States v. Frazier*, No. 24-CR-00093,

9

2024 WL 5113496, at *2 (W.D. La. Dec. 12, 2024). Defendant's continued disarmament is justified by his prior conviction for burglary, given that through such conduct he has shown himself to be a risk to cause further disruption to the public order or violence in the future, and the use of "going armed" laws at or around the time of the Founding shows that § 922(g)(1)'s methods—lasting disarmament—have historical precedent. As was the case for the common-law burglary statutes identified by the United States, the "why" and the "how" of the "going armed" statutes discussed by the United States in its Opposition, (Doc. 41 at 3–4), and by the Supreme Court in *Rahimi*, are analogous to Defendant's disarmament pursuant to § 922(g)(1). *See Frazier*, 2024 WL 5113496, at *2; *Diaz*, 116 F.4th at 471 n.5.

IV. **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendant's **Motion (Doc. 18)** be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 28th day of July, 2025

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA